1

2

3

4                                                          **E-FILED on**      11/7/05

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                SAN JOSE DIVISION

11

12   CHANCE WORLD TRADING E.C.,            | No. C-03-05474 RMW

13              Plaintiff,                 | ORDER GRANTING DEFENDANT'S
                                           | MOTION FOR SUMMARY JUDGMENT
14         v.
                                           | **Re Docket Nos. 52, 56, 59]**
15   HERITAGE BANK OF COMMERCE; and
     DOES ONE through TEN, inclusive,
16
              Defendants.
17

18

19

20      Defendant Heritage Bank of Commerce moves for summary judgment on plaintiff Chance World

21   Trading's sole remaining cause of action, aiding and abetting a fraud.  For the reasons set forth below, the

22   court grants the motion.

                             **I.  FACTUAL BACKGROUND**
23
        Except where otherwise noted, the following facts are undisputed:  Distant relatives Rajeev
24
     Sawhney and Rani Yadav-Ranjan embarked together on a business venture.  Mr. Sawhney agreed that his
25
     company, Chance World Trading E.C., would finance technical testing of Ms. Yadav-Ranjan's product
26
     idea.  Construction Navigator, Inc., of which Ms. Yadav-Ranjan was the president, was to be the vehicle
27
     for this venture.  Chance World agreed to invest an intial $200,000 in Construction Navigator.  The
28

     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-03-05474 RMW
     JAH

1   investment agreement was memorialized in a term sheet, which specified that the $200,000 was to be used

2   solely for the limited purposes of technical development and testing of Ms. Yadav-Ranjan's idea.

3          Construction Navigator opened a checking  account with Heritage Bank of Commerce.  There

4   were three designated signors on the account: Rani Yadav-Ranjan, Rajeev Sawhney, and Poonam

5   Sawhney (Mr. Sawhney's wife).  The New Account Client Worksheet indicates that the account required

6   two signatures to authorize any transfer[1] out of the account over $10,000.  Signature cards were never

7   signed by the Sawhneys.  On October 1, 2002, Chance World wired its initial investment of $200,000 to

8   the Construction Navigator account at Heritage Bank.

9          Despite the terms of the investment agreement limiting use of the funds to technical development

10  and testing, Ms. Yadav-Ranjan used these funds to pay her personal salary, office rent, and other general

11  corporate expenses not related to the technical testing.  To accomplish the alleged misappropriation of the

12  invested funds, Ms. Yadav-Ranjan opened a second Construction Navigator account at Heritage Bank.

13  She presented Heritage Bank's employees with a "Corporate Resolution to Open a Bank Account" signed

14  by "President/Secretary Rani Yadav-Ranjan."  This permitted the opening of another account which, unlike

15  the first account, authorized checks signed solely by Rani Yadav-Ranjan.  Subsequently, Ms. Yadav-

16  Ranjan transferred funds from the original Construction Navigator account into the newer account, without

17  ever acquiring the authorization of Mr. or Mrs. Sawhney.

18         On January 19, 2003, plaintiff sent an e-mail stating that Ms. Yadav-Ranjan was misappropriating

19  the $200,000 plaintiff had invested and requesting a cessation of all activities in the original Construction

20  Navigator bank account.  Decl. of Breck E. Milde, Ex. C.  The email purported to be from Mr. Sawhney

21  and was addressed to several Construction Navigator personnel and "heritage@herbank.com." *Id*.

22  According to uncontradicted testimony, heritage@herbank.com is "not a valid email address" for Heritage

23  Bank.  Dep. of Joan Leis 67:14.

24

25

26         [1]     The parties disagree as to whether the two-signature requirement applied to all transfers out
    of the account of over $10,000 (Chance World's position), or only checks drawn on the account for more
    than $10,000 (Heritage Bank's position).  Heritage Bank claims that the initial account paperwork includes
27  a notation of "2 sigs over $10,000." Decl. of Joan Leis, Ex. A. The court must consider the evidence in the
    light most favorable to the non-movant on a motion for summary judgment, and the notation is susceptible
28  of Chance World's interpretation.  For the purposes of this motion, the court will assume that two
    signatures were required for any sort of transfer out of the account of over $10,000.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-03-05474 RMW
JAH                                                          2

1        Eventually, Ms. Yadav-Ranjan  misappropriated the entire $200,000.  None of the withdrawals of

2   this money was authorized by more than one signature.  Chance World sued Ms. Yadav-Ranjan to recover

3   the money and eventually settled for $100,000.

4        Chance World filed suit against Heritage Bank for allowing this misappropriation to occur.  The

5   court granted defendant's motion to dismiss the original complaint because plaintiff had not adequately pled

6   the existence of a contractual, statutory, or tort duty owed by defendant to plaintiff Chance World that had

7   been breached.  Subsequently, plaintiff filed an amended complaint adding new causes of action, including

8   aiding and abetting a fraud.  Only the aiding-and-abetting cause of action survived the defendant's second

9   motion to dismiss.

10                                        **II.  LEGAL ANALYSIS**

11   **A.  Legal standard**

12        Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no

13   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

14   FRCivP 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty*

15   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient

16   evidence for a reasonable jury to return a verdict for the non-moving party.  *Id.*  A party moving for

17   summary judgment who does not have the ultimate burden of persuasion at trial has the initial burden of

18   producing evidence negating an essential element of the non-moving party's claims or showing that the non-

19   moving party does not have enough evidence of an essential element to carry its ultimate burden of

20   persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

21        Jurisdiction in this case is based on diversity of citizenship, *see* 28 U.S.C. § 1332(a)(2), and this

22   court must therefore use California law.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  The Ninth

23   Circuit has explained courts are to determine state law thusly:

24           When interpreting state law, federal courts are bound by decisions of the state's highest
             court.  In the absence of such a decision, a federal court must predict how the highest state
25           court would decide the issue using intermediate appellate court decisions, decisions from
             other jurisdictions, statutes, treatises, and restatements as guidance.  However, where there
26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-03-05474 RMW
JAH                                             3

is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.

*Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (1996) (internal quotation marks and citations omitted); *see also Vestar Dev. II, LLC v. Gen. Dynamics Corp*., 249 F.3d 958, 960 (9th Cir. 2001).

In California, a claim for aiding and abetting a tort requires two things: knowledge of the underlying tort, and substantial assistance in its commission.  The law pertinent to plaintiff's claim is most clearly stated in *Saunders v. Superior Court*: "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act."  27 Cal. App. 4th 832, 846 (1994).  A later court emphasized that "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted."  *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1147 (2005).  California courts have acknowledged that the tort of aiding and abetting is at odds with statutory limitations on bank liability, *see* Cal. Fin. Code § 952,[2] but the court in *Casey* nonetheless held that a bank can be liable for aiding and abetting if it had "actual knowledge" of the underlying wrong.  *Id.* at 1152-53.

However, on the specific facts in *Casey*, the court held that allegations that the defendant banks allowed officers of a group of investment companies to engage in "skullduggery" was insufficient as an allegation the banks had knowledge that the officers were breaching fiduciary duties, and thus aiding-and-abetting liability could not attach to the banks.  127 Cal. App. 4th at 1151.  Specifically, the plaintiff had alleged that

> the banks aided and abetted the [officers] in this money laundering scheme by allowing them to open accounts with invalid tax identification numbers, which accounts were then used to drain funds from the Estate to the accounts of individual directors, officers, their families and affiliated companies; allowing large sums of cash, often in excess of $250,000 at a time and aggregating some $6 million, to be removed from [the banks'] cash vaults (in unmarked duffel bags); violating banking regulations and the [banks'] own internal policies and procedures; allowing obviously forged negotiable instruments to be paid; and, ignoring

---

[2]     This section generally requires a bank to ignore all demands made upon an account by anyone other than an account holder.  There are exceptions for actions compelled by court order, and for account freezes of up to three days demanded by an adverse claimant who presents the bank with an affidavit.  Cal. Fin. Code § 952(a), (b).  Neither of these exceptions apply to the instant case.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-03-05474 RMW
JAH                                                                 4

monetary restrictions ('not to exceed' limits) appearing on the face of individual checks by paying sums in excess of such limits.

*Id*. at 1142 (internal quotation marks omitted; second and third alterations in original).  In spite of this egregious conduct, the court in *Casey* held that knowledge of such atypical banking procedures did not constitute actual knowledge of the "underlying tort" required in a claim for aiding and abetting.  *Id*. at 1151. The court held that "the banks' alleged knowledge of . . . suspicious account activities—even money laundering—*without more*, does not give rise to tort liability for the banks."  *Id.* (emphasis in original).

**B.  Application**

In its motion for summary judgment, Heritage Bank does not deny that Chance World has evidence that Heritage Bank provided substantial assistance to Ms. Yadav-Ranjan's transfer and withdrawal of the funds originally deposited in the Construction Navigator account, which required two signatures for the transfer or withdrawal of sums over $10,000.  The disposition of Heritage Bank's motion instead hinges on whether Chance World has raised a triable issue of material fact on the issue of whether Heritage Bank had actual knowledge of Ms. Yadav-Ranjan's fraud.  Chance World has not.

Chance World argues that from some combination of the following list of facts[3] an inference can be drawn that Heritage Bank knew Ms. Yadav-Ranjan was fraudulently misappropriating the $200,000 investment:

(1) Heritage Bank knew Construction Navigator was a start-up company funded by a venture capital firm, Chance World;

(2) Heritage Bank knew that the initial $200,000 deposit into the Construction Navigator money market account came from Chance World;

(3) Heritage Bank had a copy of the "term sheet" between Chance World and Construction Navigator;

(4) Heritage Bank knew that Chance World was purchasing 51 percent of the Construction Navigator stock;

---

[3]      The evidence presented does not support all these purported facts.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-03-05474 RMW
JAH                                                                                      5

1    (5) withdrawals for more than $10,000 authorized solely by Ms. Yadav-Ranjan were forbidden by

2        the terms of the bank account, the Construction Navigator corporate charter, and California

3        corporate law; and

4    (6) Heritage Bank allowed Construction Navigator to open a corporate banking account before

5        receiving a corporate resolution authorizing the opening of a bank account, which was against

6        Heritage Bank's policy.

7  Even assuming, for the sake of argument, that all of the above statements are supported by admissible

8  evidence, Chance World's contentions are unavailing.

9        That Chance World was a venture capitalist or funded Construction Navigator does not compel the

10  inference that Ms. Yadav-Ranjan was misusing funds.  (Otherwise, venture capital firms would never fund

11  start-up companies.)  The term sheet contains in very general terms the substance of the agreement

12  between Chance World and Construction Navigator; it contains no restrictions on Construction Navigator's

13  use of funds.  That Chance World was acquiring a majority interest in Construction Navigator does not

14  imply Heritage Bank knew of Ms. Yadav-Ranjan's misdealings.

15        Even if the transfers out of Construction Navigator's accounts did not comport with Heritage Bank

16  rules or California corporate law, that alone is insufficient to show that Heritage Bank was aware of Ms.

17  Yadav-Ranjan's misuse of funds.  Plaintiff, citing *Casey* and *Neilson v. Union Bank of California*, 290 F.

18  Supp. 2d 1101 (C.D. Cal. 2003), claims that such "atypical banking procedures" are, as a matter of

19  California law, evidence that a bank knows of the fraudulent behavior of a client.  Plaintiff has misapplied

20  these two cases to the instant situation.  The alleged irregularities in this case, considered in the light most

21  favorable to Chance World, pale in comparison to the activities alleged in *Casey*.  The court in *Casey*

22  specifically held that allegations that the defendant banks violated their "own internal policies and

23  procedures" were insufficient as allegations the banks were aware of fiduciary breaches committed by

24  customers.  127 Cal. App. 4th at 1142, 1151.  As a matter of California law, Heritage Bank's failure to

25  adhere to a two-signature requirement or follow other internal policies regarding the documents required for

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-03-05474 RMW
JAH                                                                                    6

1    corporate checking accounts cannot constitute knowledge that Ms. Yadav-Ranjan was engaged in any

2    fraudulent activity.[4]

3         Chance World claims that *Neilson* stands for the proposition that "atypical banking procedures"

4    allow an inference that a bank had knowledge of a client's crimes.  Chance World distorts *Neilson*.  The

5    court in *Neilson* had to consider whether a plaintiff had adequately pleaded the knowledge element of an

6    aiding-and-abetting cause of action.  290 F. Supp. 2d at 1119-20.  The court ruled that although the

7    plaintiff had not directly alleged that the defendant banks knew of their client's illegal activities, other

8    statements in the complaint were sufficient as allegations of the banks' knowledge.  *Id.* at 1121.  The court

9    stated:

10        While it is true the complaint does not directly state that the Banks knew Slatkin was
         running a Ponzi scheme and stealing investor funds, this is the net effect of allegations that
11        the Banks knew of Slatkin's "fraud," "actively participated" in the Ponzi scheme with
         knowledge of his "crimes," and accommodated him by using atypical banking procedures to
12        service his accounts.

13   *Id.*   Reading the phrase "atypical banking procedures" in context in the decision, it seems unlikely the

14   *Neilson* court would have found allegations of atypical banking procedures alone sufficient as an allegation

15   of knowledge by the banks.  Even if plaintiff's reading of *Neilson* was correct, this court must, under *Lewis*,

16   use *Casey* as a source of California law.  Under *Casey*, Chance World must produce evidence that

17   Heritage Bank had actual knowledge of Ms. Yadav-Ranjan's crimes; it cannot rely on inferences drawn

18   from sloppy work by Heritage Bank.  *See Casey*, 127 Cal. App. 4th at 1151.

19        Even though not required for Heritage Bank to succeed on its motion for summary judgment,

20   Heritage Bank has produced evidence that it did not know of Ms. Yadav-Ranjan's fraud.  Two of Heritage

21   Bank's employees have testified in depositions that they were unaware that Ms. Yadav-Ranjan was

22   misusing Chance World's funds.  From the available evidence, it appears that Chance World's only attempt

23   to notify Heritage Bank of Ms. Yadav-Ranjan's wrongdoing before it was completed is the e-mail

24   misaddressed to heritage@herbank.com.

25

26

27        [4]   Heritage Bank's alleged mishandling of the Construction Navigator account seems even
     more innocuous in light of California corporations law, which gives "the chairman of the board, the president
     or any vice president and the secretary, any assistant secretary, the chief financial officer or any assistant
28   treasurer of such corporation" apparent authority to execute any written instrument.  Cal. Corp. Code §
     313.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-03-05474 RMW
JAH                                            7

1    In short, under California law, the inference that Heritage Bank knew of Ms. Yadav-Ranjan's fraud

2  cannot be drawn from evidence that Heritage Bank did not follow its own internal rules, and the only other

3  evidence Chance World has produced that could show knowledge by Heritage Bank is an e-mail, which,

4  according to uncontradicted testimony, was not sent to a valid address for the bank.  While there are many

5  facts in dispute between the parties, none are germane to what Heritage Bank knew about Ms. Yadav-

6  Ranjan's activities.  Chance World has offered no evidence that shows Heritage Bank had the requisite

7  knowledge to be held liable, under California law, for aiding and abetting Ms. Yadav-Ranjan's fraud.  Since

8  knowledge of the underlying tort is an essential element of Chance World's aiding-and-abetting cause of

9  action, summary judgment for Heritage Bank is appropriate.

10                                  **III.  ORDER**

11    For the foregoing reasons, the court grants defendant Heritage Bank's motion for summary

12  judgment.

13

14

15  DATED:          11/4/05                                            /s/ Ronald M. Whyte
                                                                      RONALD M. WHYTE
16                                                                    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-03-05474 RMW
JAH                                          8

1 | **Notice this document has been electronically sent to:**

2 | **Counsel for Plaintiff:**
Alan L. Martini   aobey@smtlaw.com

3 | David Sheuerman   dsheuerman@smtlaw.com

4 |

5 | **Counsel for Defendant:**
Perry J. Woodward  pwoodward@terra-law.com

6 | Breck E. Milde   bmilde@terra-law.com

7 |

8 | Counsel are responsible for distributing copies of this document to co-counsel that have not registered for
9 | e-filing under the court's CM/ECF program.

10 |

11 |

12 | **Dated:**    11/7/05       /s/ JH
                     **Chambers of Judge Whyte**

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-03-05474 RMW
JAH                  9